UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTOPHER F.,[1]

                             Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.

_____

**DECISION AND ORDER**

1:20-cv-01062 (JJM)

       This is an action brought pursuant to 42 U.S.C. §405(g) to review the final determination of the Commissioner of Social Security that plaintiff  was not entitled to disability insurance benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the pleadings [10, 12]. [2]  The parties have consented to my jurisdiction [13].  Having reviewed their submissions [10, 12, 14], plaintiff's motion is granted.

## BACKGROUND

       The parties' familiarity with the 768-page administrative record [8] is presumed. Further, the parties have comprehensively set forth in their papers plaintiff's treatment history and the relevant medical evidence. Accordingly, I refer only to those facts necessary to explain my decision.

_____

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering.  All other page references are to the CM/ECF pagination.

After plaintiff's claim was initially denied ([8] at 12), an administrative hearing was held on May 21, 2019 before Administrative Law Judge ("ALJ") Collin Delaney. *See* id. at 35-72 (transcript of hearing).  On July 1, 2019, ALJ Delaney issued a decision finding that plaintiff was not disabled.  Id. at 12-29. Following an unsuccessful request for review with the Appeals Council (id. at 1-4), plaintiff initiated this action.

**A.  ALJ Delaney's RFC Determination**

ALJ Delaney found that plaintiff's severe impairments were "lumbar degenerative disc disease; right knee pain; hypertension, irritable bowel syndrome (IBS); bipolar disorder; anxiety disorder; and substance abuse disorder".[3]  Id. at 15.  He also determined that plaintiff had the residual functional capacity ("RFC") to perform medium work, with the following nonexertional limitations:

> "[T]he claimant . . . is limited to simple, routine and repetitive tasks, but not at a production rate pace; is limited to only occasional, concentrated exposure to workplace hazards such as unprotected heights and dangerous, moving machinery; is limited to only occasional contact with the general public, and frequent interactions with coworkers and supervisors; would be off-task up to 10% of the duty day; and would have up to one unscheduled absence per month."

Id. at 18.

To support his RFC findings concerning plaintiff's non-exertional limitations, ALJ Delaney considered opinions concerning plaintiff's functional limitations from several

---

[3]    ALJ Delaney also considered, but rejected for purposes of this step of the sequential evaluation, evidence of "gastroesophageal reflux disease . . . and left ankle fracture, status post open-reduction internal fixation".  [8] at 15.  Plaintiff does not challenge ALJ Delaney's findings concerning his severe impairments.

sources: 1) consultative examiner Christine Ransom, Ph.D.; 2) consultative examiner Janine

Ippolito, Psy.D.; and 3) state agency psychological consultant H.[4] Ferrin, Ph.D.  Id. at 20-26.

Following her examination of plaintiff on August 19, 2016, Dr. Ransom opined

that plaintiff "would have mild episodic difficulty performing complex tasks, relating adequately

with others and appropriately dealing with stress due to unspecified anxiety disorder, currently

mild; bipolar disorder, currently mild and episodic".  Id. at 264.  She found no evidence of

limitations in other categories of mental functioning.  ALJ Delaney found Dr. Ransom's opinion

"highly persuasive", but "provided some greater limitations within the RFC in consideration of

the claimant's allegations".  Id. at 24.

Dr. Ippolito examined plaintiff on June 5, 2017.  She concurred with Dr. Ransom

that plaintiff was mildly limited in "applying complex directions and instructions",

understanding, and remembering.  Id. at 400.  In addition, Dr. Ippolito opined that plaintiff had

mild limitations in sustaining concentration and performing tasks at a consistent pace.  Id.

Finally, she found that plaintiff had "moderate to marked limitations" in "regulat[ing] emotions,

control[ling] behavior, and maintain[ing] wellbeing".  Id.  ALJ Delaney did not state how

persuasive he found Dr. Ippolito's opinion, but cited Dr. Ippolito's finding that plaintiff had a

"mild impairment to memory and concentration because of his anxiety".  Id. at 22, 26.  ALJ

Delaney did not discuss Dr. Ippolito's remaining opinions.

On June 28, 2017, Dr. Ferrin issued an opinion concerning plaintiff's functional

limitations based upon a review of the records available in plaintiff's file.  Id. at 84-87.

Although Dr. Ippolito's report was in the file at the time (see id. at 81), Dr. Ferrin did not

---

[4]      Dr. Ferrin's first name does not appear in the record.

acknowledge Dr. Ippolito's findings or otherwise discuss her opinion in his assessment.  By

contrast, Dr. Ferrin cited Dr. Ransom's opinion to support his findings.  *See* id. at 84-87.

## ANALYSIS

### A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant

is not disabled only if the factual findings are not supported by 'substantial evidence' or if the

decision is based on legal error."  Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42

U.S.C. § 405(g)).  Substantial evidence is that which a "reasonable mind might accept as

adequate to support a conclusion".  Consolidated Edison Co. of New York. Inc. v. NLRB, 305

U.S. 197, 229 (1938).  It is well settled that an adjudicator determining a claim for DIB and/or

SSI employs a five-step sequential process.  Shaw, 221 F.3d at 132; 20 C.F.R. §§ 404.1520,

416.920.  The plaintiff bears the burden with respect to steps one through four, while the

Commissioner has the burden at step five.  *See* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir.

2012).

Plaintiff argues that the RFC is not supported by substantial evidence. Plaintiff's

Memorandum of Law [10-1] at 17-25.  Specifically, plaintiff argues that ALJ Delaney failed to

support the RFC with substantial evidence because he failed to discuss whether he found Dr.

Ippolito's opinion persuasive, failed to provide any reason for rejecting Dr. Ippolito's opinions

concerning a moderate to marked limitation, and failed to incorporate any such limitation into

the RFC.

**B.     ALJ Delaney Failed to Support the RFC with Substantial Evidence**

An ALJ's review of medical evidence in a claimant's file, for claims filed on or after March 27, 2017[5], is governed by 20 C.F.R. § 404.1520c, entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017".  Under this new regulation, "the Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on the following five factors:  supportability; consistency; relationship with the claimant; specialization; and 'other factors'".  Andrew v. Commissioner, 2020 WL 5848776, *5 (N.D.N.Y. 2020) (quoting 20 C.F.R. § 404.1520c(a)-(c)).

An ALJ is "duty-bound to review all of the evidence before her, resolving inconsistencies, and make a disability determination that is consistent with the evidence as a whole".  Rice v. Commissioner, 2020 WL 4283894, *4 (W.D.N.Y. 2020).  Where an ALJ's decision "gives no clue" how the RFC "accommodates or takes into account . . . moderate mental limitations", the ALJ's findings at steps 4 and 5 of the sequential analysis are "unsupported by substantial evidence".  Reynolds v. Colvin, 2014 WL 4184729, *5 (N.D.N.Y. 2014).

Plaintiff correctly points out that "[w]hile the ALJ briefly mentioned some of the findings Dr. Ippolito had made during her examination, the ALJ failed to evaluate her opinion".  Plaintiff's Memorandum of Law [10-1] at 20.  Plaintiff asserts that "[p]laintiff's inability to a marked level to maintain emotional control and behavior during a workday would arguably pose difficulty for Plaintiff to maintain competitive employment".  Id. at 21.  For example, plaintiff's marked limitation in regulating his emotions, including "persisting symptoms of anxiety and mood" "create limitations on his ability to properly function in a work setting".  Id.  Plaintiff

---

[5]     Plaintiff filed his claim on March 29, 2017.  [8] at 12.

pointed to his testimony that he had "roller coaster" days and was "very easily" agitated as support for additional limitations based upon Dr. Ippolito's findings.  Id.

In addition, plaintiff pointed to examples in his treatment records reflecting examples and consequences of his limitations maintaining control over his emotions and behavior. See id. citing Administrative Record [8] at 310 ("self-isolating"), 321 (plaintiff "presents as flirtatious" with his counselor and behaves "inappropriate[ly] at times" during counseling sessions); 338 (documents plaintiff "impulsively 'taking off'" and "impulsive relationships, affairs, relocations"); 345 (documenting stressor triggering "increased arguments with his wife" over "little things" and barriers to regular attendance at his counseling sessions, including poor organization); 353 ("[r]egarding impulse control the client shows poor planning"); 583-84 (documenting treatment goals, including "deal with stress better" and "stop having outbursts").

Because ALJ Delaney did not acknowledge this limitation, much less discuss it, I cannot determine whether he rejected this limitation due to substantial evidence in the record, whether he intended for the RFC to reflect this limitation, or whether he forgot to discuss it.  If ALJ Delaney intended for the limitations in the RFC to reflect a moderate-to-marked inability to regulate emotions and control behavior, he did not articulate how the included restrictions address that limitation.  Moreover, because I cannot determine from ALJ Delaney's decision how (or even whether) he intended to account for this limitation, I also cannot determine whether the vocational expert's testimony is reliable and based upon a complete RFC.

In response, the Commissioner argues that "even marked mental limitations do not preclude work" and that "limiting Plaintiff to simple, routine and repetitive tasks, but not at a production rate pace; only occasional contact with the general public; frequent interaction with

co-workers and supervisors; while allowing him to be off-task up to ten percent of the work day with one unscheduled absence from work per month" adequately addresses Dr. Ippolito's moderate-to-marked limitations.  Commissioner's Brief [12-1] at 14-16. However, all of the cases cited by the Commissioner on this point deal with marked limitations in managing <u>stress</u> being accounted for by limiting a plaintiff to simple, low stress work.

    The Commissioner next argues that plaintiff, "who bears the burden of proving that he is incapable of performing substantial gainful activity", "has failed to show how the RFC is inconsistent with Dr .Ippolito's moderate-to-marked limitations".  Commissioner's Brief [12-1] at 15.  The cases cited by the Commissioner, however, fail to support these contentions, as they deal with different limitations. For example, <u>Uplinger v. Berryhill</u>, 2019 WL 4673437 (W.D.N.Y. 2019), <u>Martin v. Saul</u>, 2020 WL 5096057 (W.D.N.Y. 2020), <u>Blocker v. Saul</u>, 2020 WL 1047737 (W.D.N.Y. 2020), and <u>Swanson v. Commissioner</u>, 2020 WL 362928 (W.D.N.Y. 2020) each deal with a limitation on managing stress by including a limitation in the RFC to simple and/or low stress work. *See also* <u>Crampton v. Commissioner</u>, 2017 WL 2829515, *11 (N.D.N.Y. 2017) (mild impairments in plaintiff's ability "to maintain attention and concentration and to perform complex tasks, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress" accounted for with RFC limiting plaintiff "to simple, routine, and repetitive tasks" where "the record does not support any obvious greater restrictions in these areas of functioning"); <u>Moxham v. Commissioner</u>, 2018 WL 1175210, *9 (N.D.N.Y. 2018) (plaintiff "fails to illustrate how the mental limitations included in the ALJ's RFC (simple tasks, simple instructions, frequent interaction with supervisors, coworkers, and the public, and decisions on simple work-related matters) do not adequately account" for "moderate-to-marked limitations in appropriately

- 7 -

dealing with stress, making appropriate work decisions, and maintaining a regular schedule as well as moderate limitations in relating adequately with others").

Managing stress is not the same as managing one's emotions and behavior. *See, e.g.* <u>Blocker</u>, 2020 WL 1047737 at *5 (determining that the area of mental functioning involving adapting and managing oneself, which includes "the abilities to regulate emotions, control behavior, and maintain well-being in a work setting", "does not expressly include the limitations of making appropriate decisions or dealing with stress"). Accordingly, while the RFC *may* have accounted for the moderate-to-marked limitation expressed in Dr. Ippolito's report, ALJ Delaney has not explained how. Nor has the Commissioner demonstrated that, as a matter of law, this court may presume that the limitations in the RFC adequately address plaintiff's limitations in managing his emotions and behavior.

The Commissioner urges me to follow <u>Rice v. Commissioner</u>, 2020 WL 4283894, *4 (W.D.N.Y. 2020), in which this court recently upheld and ALJ's RFC findings where Dr. Ippolito issued a report containing a similar limitation in managing one's emotions and behavior. In <u>Rice</u>, the ALJ assigned "great weight" to Dr. Ippolito's opinions. The plaintiff there argued that the ALJ failed to account for Dr. Ippolito's opinion that plaintiff had moderate-to-marked limitations in "adequately relating with others and appropriately dealing with stress" and "moderating his emotions and controlling his behavior". There, the RFC included limitations to:

> "[S]imple directions, and simple work-related decisions; takes place in a low-stress environment with no supervisory responsibilities, no production-rate pace, no independent decision making except with respect to simple routine decisions; is subject to only occasional contact with supervisors and co-workers and only incidental contact with the public; and can be performed independently or generally isolated from other employees".

Id. at *4.  In arriving at the RFC, "the ALJ discussed Dr. Ippolito's opinions at length, including the limitations related to stress and interacting with others" and cited other evidence in the record to support his RFC findings.  Id. at *4-5.  Rice is similar to the case here in that it deals with an opinion from Dr. Ippolito and a moderate-to-marked limitation in regulating emotion, controlling behavior, and maintaining well-being.  However, because ALJ Delaney here did not even acknowledge this limitation in his decision, much less discuss it, Rice is not persuasive.

"As a general matter, the ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony, and there is no absolute bar to crediting only portions of medical source opinions." Raymer v. Colvin, 2015 WL 5032669, *5 (W.D.N.Y. 2015). "However, where the ALJ's RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted. Thus, when an ALJ adopts only portions of a medical opinion, he must explain why he rejected the remaining portions." Felicia A. v. Commissioner of Social Security, 2021 WL 2153878, *2 (W.D.N.Y. 2021).

This record includes - and plaintiff cites - a number of examples of the types of inappropriate behavior which he has demonstrated over the course of his treatment.  See Plaintiff's Memorandum of Law at 21, citing Administrative Record [8] at 310, 321, 326, 338, 345, 353,  583-84;  see also [8] at 325 (documenting plaintiff's "flirtatious" behavior with his counselor, including "asks personal questions, smiles inappropriately throughout session, often comments on writer's appearance, and the last two sessions hugged writer at the end of the session, making sessions very uncomfortable"); [8] at 398 (Dr. Ippolito documents plaintiff's report that the prior month, plaintiff "was arrested . . . for harassment/menacing").

It may be that an additional restriction in the RFC that targets the moderate-to-marked limitation found here by Dr. Ippolito, and specifically addresses the types of behaviors

documented in the record, would not preclude competitive work when combined with other limitations.  However, there is no testimony from a vocational expert to demonstrate that this is the case, and the opposite could also be true.  *See* <u>Jimmie E. V. Commissioner</u>, 2021 WL 2493337, *5 (W.D.N.Y. 2021) ("the vocational expert testified that . . . physical altercations at the workplace were grounds for immediate termination, and that an individual would be terminated if verbal altercations occurred after a warning was given for the first instance. . . . This testimony suggests Dr. Jonas' opined limitations regarding plaintiff's ability to . . . regulate emotion, control behavior and maintain well-being, could be work-preclusive").

   Finally, the Commissioner argues that "the ALJ's RFC finding is consistent with the opinion of State agency psychologist Dr. Ferrin, whose review of the available evidence on June 28, 2017, included Dr. Ippolito's opinion".  Commissioner's Brief [12-1] at 17.  However, ALJ Delaney did not cite this as a reason for rejecting Dr. Ippolito's opinion.  *See* Administrative Record [8] at 22-23, 27.  The Commissioner's *post-hoc* explanation cannot re-write or fill gaps in an ALJ's opinion.  *See* <u>Snell v. Apfel</u>, 177 F.3d 128, 134 (2d Cir 1999) ("[a] reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action").  Moreover, Dr. Ferrin did not discuss Dr. Ippolito's opinion, let alone explicitly reject it, anywhere in his narrative explanation.  *See* Administrative Record [8] at 84-87.  Accordingly, while Dr. Ippolito's opinion was in the record at the time Dr. Ferrin issued his opinion (<u>id.</u> at 81), it is not clear whether Dr. Ferrin reviewed it.

   Remand is necessary for the ALJ to properly consider and analyze Dr. Ippolito's opinion in accordance with 20 C.F.R. §404.1520c, and, if necessary, to further develop the record concerning this limitation and its effect on plaintiff's ability to function in a work setting. Because remand is necessary, I do not reach plaintiff's remaining arguments.  *See* <u>Stack</u>, 2020

WL 5494494, *6 ("[b]ecause the Court has determined that remand is warranted on this basis, it need not reach plaintiff's remaining arguments").

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings [10] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and the Commissioner's motion for judgment on the pleadings [12] is denied.

**SO ORDERED**.

Dated: January 14, 2022

/s/    Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge